## OWEN v. GILES et al.*

(Circuit Court of Appeals, Eighth Circuit. November 22, 1907.)

No. 2,528.

1. COURTS—FEDERAL COURTS—PROCEDURE—APPEAL AND ERROR—ASSIGNMENT OF ERRORS.

Under the practice in the federal courts, a motion for new trial is addressed to the discretion of the trial court, and the contents thereof do not limit nor affect the matters that may be embraced in an assignment of errors in an appellate court.

2. CONTRACTS—CONSTRUCTION—TIME AS OF THE ESSENCE OF THE CONTRACT.

Although a contract does not expressly so provide, time may nevertheless be of the essence when other conditions manifest its importance.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 938–941.]

3. SAME—CONTRACT FOR RAILROAD CONSTRUCTION.

Defendants entered into subcontracts with plaintiffs, who were themselves subcontractors, for doing a portion of the grading work in the construction of a railroad. Their contracts specified the time when the work should be completed, and other portions of the work waited on such completion. They were furnished a substantial copy of the contract between plaintiffs and the principal contractor, showing the obligations and relations of plaintiffs, as well as the discretionary power reserved by the railroad company to take the work out of plaintiffs' hands for default in completion or slowness in performance, and to complete it at plaintiffs' expense. *Held*, that the time specified for completion was of the essence of defendants' contracts, and that such time having expired with a substantial part of the work uncompleted, whereby the company became entitled to complete it at plaintiffs' expense, plaintiffs had the right for their own protection and without defendants' consent, either by themselves or through the company, or the principal contractor with their consent, to put a force on the work to assist in its completion, and to charge defendants with the actual cost of such work to them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 1388.]

4. SAME—LAW GOVERNING.

A statute of the state in which an action is tried, providing that time is not of the essence of a contract unless by its terms expressly so provided, has no application where the contract in suit was made and to be performed in another state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 724–726.]

In Error to the Circuit Court of the United States for the District of South Dakota.

This was an action by Owen Bros. against Giles and Glassie to recover moneys paid other parties to complete contracts which defendants had undertaken to perform. The trial resulted in verdict and judgment for defendants, which this writ of error is brought to review. The material facts are as follows: The Chicago, Milwaukee & St. Paul Railway Company contracted with McIntosh Bros., railroad contractors, for the construction of a line of

*Rehearing denied February 15, 1908.

road in Iowa. McIntosh sublet a portion of the work (earth work for the roadbed) to the plaintiffs. The plaintiffs then sublet to defendants two distinct portions of the work which they had contracted with McIntosh to do. The first contract between plaintiffs and defendants, dated September 27, 1901, was made as follows: The plaintiffs wrote defendants, inclosing a copy of their contract with McIntosh, with slight changes in prices, etc., to adapt the pertinent parts of it to the matter in hand, and proposed to sublet to defendants a part of the work. It was stated in the letter that defendants, if they accepted the proposition, were to assume and perform "all conditions, promises, guaranties, covenants, obligations, liabilities, and forfeitures" of the McIntosh contract. The defendants accepted the proposition. The document inclosed in the letter was in form the ordinary railroad construction contract, and it covered other work than earth excavation, as, for instance, bridges and culverts. The form of contract inclosed contained the following provisions: "The contractor further agrees to commence said work within twenty days from the date hereof and to prosecute said work with such forces and means as will, in the opinion of the chief engineer of the railway company, insure the completion thereof on or before August 1, 1902"; also "the railway company may, however, if it so elects, do grading with its own forces and outfits where, in the opinion of its chief engineer, it is impracticable for the contractor to do the work"; also that, if in the opinion of the chief engineer the contractor failed to comply with any of the stipulations to be performed by him, the railway company should have the right, by its general manager, to cancel the contract and declare it void; also that, if the contractor should at any time neglect or refuse to progress with the work as fast (in the opinion of the chief engineer communicated to him in writing) as might be necessary for its completion by the time specified, the railway company might, by its general manager, declare the contract abandoned and forfeit the amounts retained from monthly estimates, or that the company might, at the option of its general manager, employ others to execute any part of the work, charge the cost to the contractor, and deduct the same from retained percentage or from any payment that should become due on former or subsequent estimates. This last provision seems by its terms to apply to cases where the contractor is not already in default, but the chief engineer is of the opinion he will not complete the work within the time prescribed. It was also provided that the chief engineer might delegate his authority to assistants and inspectors.

The second contract, dated July 3, 1902, covered another portion of plaintiffs' work. It did not expressly embody and contained no reference to the McIntosh contract as was the case with the first one. It was specifically prescribed in the second contract that the work embraced therein should be completed October 1, 1902. The evidence tended to show that on August 1, 1902, but about one-third of the work under the first contract was completed, and on October 1, 1902, about one-half of the work covered by the second contract was completed. During the summer of that year the local engineer of the railway company, its division engineer, McIntosh, the principal contractor, and the plaintiffs urged defendants to increase their force of men and teams. On September 13, 1902, the division engineer wrote to McIntosh, advising him that no work was being done between certain stations covered by defendants' subcontract, and that, unless forces were put upon the work at once, it would not be finished by contract time. McIntosh was directed to take the matter up with the subcontractors, and have the forces increased as soon as possible. About October 1, 1902, some witnesses say a few days before and others a few days afterwards, McIntosh, with plaintiffs' consent, put upon the work covered by defendants' two contracts a force of men, teams, and tools, and thereafter work was done by them alongside and with defendants' outfit until the two contracts were completed January 13, 1903. There was evidence tending to show that the additional force was put upon the work with defendants' consent; also evidence that it was against their protest. The additional work done to hasten the completion of the contracts was termed "force work," as distinguished from that done by the defendants. The cost of the force work. and we include therein that done by a contractor named Cuddington, was paid by McIntosh, and charged to plaintiffs at rates that were reasonable and usual

for the season. It was not shown by plaintiffs that the letter of direction from the division engineer to McIntosh was conveyed to defendants. When the entire work that should have been done by defendants was completed and measured up, it was found that at contract rates it came to $18,873.92. There had been paid to defendants as the work progressed $15,410.74. There was paid to Cuddington for force work $2,673.20, and by McIntosh for other men and teams $10,532.26, making a total paid to defendants and for assistance in completion of the contracts of $28,616.20, a balance of overpayment, as is claimed by plaintiffs, of $9,742.28. Though there is some confusion in the figures, it will do to say that plaintiffs sought to recover the excess of payments over contract price. There was another cause of action upon a promissory note for $400, the defense to which was payment. At the trial of the case there was practically no dispute as to the amount the total work came to or as to the various payments to defendants and others on account thereof, excepting that it was claimed that in the settlement of the force work account between McIntosh and the plaintiffs the latter were allowed a rebate in a substantial sum. In the complaint the plaintiffs set forth the facts concerning the contracts, the failure of defendants to complete within the contract periods, the doing of the force work, that defendants consented thereto, the various amounts and their payment. At the conclusion of the trial, the case had taken such a turn that it was practically submitted to the jury upon the question whether defendants had consented to or protested against the doing of the force work, and upon that question the jury found for defendants. They also found, as directed by the court, that the note for $400 had been paid.

H. C. Brome (A. H. Burnett and J. W. Fowler, on the brief), for plaintiff in error.

Thomas W. LaFleiche (A. J. Plowman, on the brief), for defendants in error.

Before SANBORN and HOOK, Circuit Judges, and PHILIPS, District Judge.

HOOK, Circuit Judge (after stating the facts as above). The motion for a new trial and the assignment of errors need not be compared. Under the practice in the courts of the United States the former is addressed to the discretion of the trial court, and the contents thereof do not limit or otherwise affect the matters that may be embraced in the latter. The court instructed the jury in substance that, if they found that the additional forces went upon the ground covered by defendants' contracts and performed the "force work" against the will, protest, and consent of defendants, the plaintiffs were not entitled to recover sums paid on account thereof. To this instruction there was an exception. It was claimed that during the trial plaintiffs abandoned their right to recover as upon express contract, and elected to rely wholly upon an implied contract of defendants to pay for services performed at their request. Some observations of the trial court appearing in the record tend to support this contention. We do not think, however, plaintiffs intended to waive their right to insist that under the contracts they could lawfully enter upon the ground with extra forces and complete the work after defendants made default. The supposed election whereby plaintiffs abandoned their right of recovery excepting upon the theory finally submitted to the jury occurred at the close of their evidence, yet it appears defendants did not confine their own evidence to a denial that they consented to or requested that the force work be done. On the contrary, their defense

was addressed to both aspects of the case; for instance, they introduced evidence that they had never received a written opinion from the chief engineer that their work was not progressing fast enough, also evidence of weather conditions by which it was sought to excuse their delay in finishing the work within the time limited. Those matters were without relevancy to a case within the narrow limits contended for. Again, at the close of all the evidence, the trial court said that, were it possible to ascertain from the proof the number of yards of force work for which defendants received the contract price, he would hold the plaintiffs would be entitled to recover therefor. Such a recovery would not depend upon defendants' consent to or request for the force work. Whilst the court was instructing the jury, plaintiffs' counsel definitely directed its attention to their position that under the contracts they had a right to take possession of the work. After the instructions had been given, they again asserted their position by excepting to the part wherein the court said there could be no recovery if the force work was done "against the will, protest, or consent of defendants." We think it quite clear from the remarks of the court that had it been of the opinion, as we are, that time was of the essence of defendants' contracts, it would not have instructed the jury as it did.

The time for completing the first contract expired August 1, 1902. The provision in that contract for the action of the engineer was designed as a coercive measure, and to insure the doing of the work within the time stated. It was not intended that defendants' time should be prolonged indefinitely if the engineer failed to indicate the number of men and teams to be employed. The first contract was not completed in time, nor was it finished on the 1st of the following October. The second contract expressly provided the work thereunder should be done by October 1, 1902; but much remained unfinished on that day. Winter was approaching, and plaintiffs were justified in believing that, if left to themselves, defendants would not finish until well along in the following year. Under these conditions, what were plaintiffs to do? Was time of performance so of the essence of the contracts that plaintiffs were entitled to proceed as for a default and forfeiture, take possession of the ground, and complete the work? If this was their right, they could avail themselves of the acts of McIntosh and Cuddington which were in their interest and with their consent. It would be as though the force work had been done by plaintiffs themselves. Though a contract does not expressly so provide, time may nevertheless be of the essence when other conditions manifest its importance. In the case at bar definite times for completion were expressed in the contracts. The contracts pertained to a work in which the different stages of progress wait upon each other, and in which the order of completion cannot be reversed. Defendants received what was substantially a copy of the contract between McIntosh and the plaintiffs, and therefore knew plaintiffs' relations and obligations to others, as well as the wide discretion reserved by the railway company to take the work out of the hands of plaintiffs, not alone for default in contract, but also for mere slothful-

ness of operation. Defendants knew that the consequences of their own lack of progress, even before the time fixed for completion, could be visited upon the plaintiffs and plaintiffs' entire contract finished with the forces either of the company or of others, as the company might elect, and the cost charged to plaintiffs. The character of the work, its connection with other parts of the general work, the relations of plaintiffs to the original contractor and the railway company, the hazard of loss plaintiffs were subject to for failure of defendants to speed their work and meet their engagements, the fixing of time for completion, all indicate that it was not intended that defendants should have an indefinite period for the doing of their work, but, on the contrary, that time was of importance, and that the time specified was of the essence of the contract. This construction applies as well to the second contract which was made with knowledge and in view of the same conditions. Wood v. Joliet Gaslight Co., 49 C. C. A. 427, 111 Fed. 463; Philips, etc., Co. v. Seymour, 91 U. S. 646, 651, 23 L. Ed. 341; Fitzgerald v. Hayward, 50 Mo. 516; Warren v. Bean, 6 Wis. 120.

On October 1, 1902, a substantial part of the work remained unfinished. The railway company by its general manager was entitled to declare the contract at an end. The provision of the first contract for a written opinion of the engineer and its communication to the contractor applied only to a case of lack of progress before the time for completion arrived, a case in which the engineer thought the work would not be completed within the specified period. That is not this case. Here the time had expired, the work was not done, and no communication of the engineer's opinion in writing was necessary. As between plaintiffs and defendants, the former were in a sense owners, and under the circumstances it was their right for the protection of their own interests to take possession of the ground and finish up the work at the expense of defendants. Philips, etc., Co. v. Seymour, supra; Champlain Construction Co. v. O'Brien (C. C.) 104 Fed. 930; Wyckoff v. Taylor, 13 App. Div. (N. Y.) 240, 43 N. Y. Supp. 31. In Philips, etc., Co. v. Seymour, the Supreme Court said:

"If the builder has done a large and valuable part of the work, but yet has failed to complete the whole or any specific part of the building or structure within the time limited by his covenant, the other party, when that time arrives, has the option of abandoning the contract for such failure, or of permitting the party in default to go on."

That defendants' men remained and worked with those who performed the force work and thereby lessened their loss does not alter the result. If plaintiffs had the right to treat defendants as being in default and to finish the work themselves or to authorize others to do so, it is immaterial that defendants objected. The right of recovery for the force work is based upon the breach of covenant to do the work within the prescribed time, and defendants' objections after breach do not impair it.

Some other matters require notice. The contracts were made and were to be performed in Iowa. Therefore the South Dakota statute that time is not of the essence of a contract, unless by its terms expressly so provided, does not apply. In plaintiffs' settlement for the force

work they were allowed a rebate. They should not recover from defendants more than they actually paid. If plaintiffs credited themselves and charged defendants with the amount of the $400 note sued on as a payment on the work, and settlement was made on the statement of account showing the same, the note has been paid, and plaintiffs cannot again have the benefit of it.

The judgment is reversed, and the cause remanded for a new trial.