CONNELL BROS. CO. v. H. DIEDERICHSEN & CO. †

(Circuit Court of Appeals, Ninth Circuit. May 18, 1914.)

No. 2361.

1. STIPULATIONS (§ 14*)—EFFECT—NECESSITY OF PROOF.

In an action for breach of contract, though defendant, for want of knowledge or information, denied the allegation of the complaint that plaintiff was a firm or company, proof that plaintiff was a firm or company was waived by a stipulation that the trial should be confined in the first instance to the issue of whether defendant had broken the contract, and, if the court should find that defendant had committed a breach, it should be set for hearing on the issue of damages.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 24–37; Dec. Dig. § 14.*]

2. APPEAL AND ERROR (§§ 197, 719*)—RESERVATION OF GROUNDS OF REVIEW—MATTERS NOT RAISED BELOW.

In an action by H. D. & Co., which the complaint alleged was a firm or company, the failure to prove such allegation was not jurisdictional, and, where objection was not raised in the lower court or covered by any assignment of error, it was raised too late in the brief.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. §§ 197, 719;* Pleading, Cent. Dig. § 1428.]

3. APPEAL AND ERROR (§ 193*)—PARTIES—DEFECT OR WANT OF CAPACITY TO SUE—MANNER OF RAISING OBJECTION.

In an action by H. D. & Co., alleged to be a firm or company, if defendant desired an allegation as to the names of the persons other than H. D., who composed the firm or company, the objection should have been made by demurrer for defect of parties plaintiff or want of capacity to sue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1226–1238, 1240; Dec. Dig. § 193.*]

4. SALES (§ 81*)—TIME FOR PERFORMANCE—TIME OF THE ESSENCE.

A contract for the sale of flour to be shipped by a steamer sailing, during the month of February was broken where, although the flour was delivered at the wharf ready for shipment during February, it was not fully loaded until March 3d, and the steamer sailed on March 8th, as ordinarily, in contracts of merchants, time is of the essence, since the time of shipment is the usual and convenient means of fixing the probable time of arrival with a view to providing funds or fulfilling contracts with third persons.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 217–223; Dec. Dig. § 81.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

213 F.—47     † Rehearing denied July 6, 1914.

5. SALES (§ 181*)—ACTIONS FOR BREACH OF CONTRACT—SUFFICIENCY OF EVIDENCE.

In an action for breach of a contract for the sale of flour to be shipped from the United States to China by a steamer sailing during February, contingent upon strikes, accidents, and other delays unavoidable or beyond the seller's control, evidence *held* to show that the delay in shipping was not due to an unavoidable cause beyond the seller's control.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 473-491; Dec. Dig. § 181.*]

6. SALES (§ 176*)—TIME FOR PERFORMANCE OF CONTRACT—WAIVER OF BREACH.

Where a buyer of flour, to be shipped to China by a steamer sailing during the month of February, established a credit with a bank at San Francisco and advised the seller that, upon presentation to a Seattle bank of the invoice, policy of marine insurance, and bill of lading, its drafts upon the buyer would be paid, and upon February 28th, the flour being then on the wharf, but supposed by the seller and the bank to have been actually shipped, the requisite papers were presented and credit given the seller for the full amount, the delay in shipment was not thereby waived, as even, if the Seattle bank had authority to waive the delay, there was no intent to make a waiver, and the facts did not constitute an estoppel.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 436-444; Dec. Dig. § 176.*]

7. SALES (§ 391*)—BREACH OF CONTRACT—MEASURE OF DAMAGES—PURCHASE PRICE WITH INTEREST.

Where a buyer of flour, upon learning of a delay in shipment, notified the seller that its customers would refuse to receive the flour, and it would hold the seller responsible, and the seller declined to recognize its responsibility, the buyer had a right to receive the cargo, sell it at the highest obtainable price, and, where the proceeds after making proper deductions for necessary expenses of handling, storage, etc., were insufficient to cover the purchase price with legal interest, it was entitled to recover the deficit from the seller.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1110-1127; Dec. Dig. § 391.*]

In Error to the United States Court for China; Rufus H. Thayer, Judge.

Action by H. Diederichsen & Co. against the Connell Bros. Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Kerr & McCord and C. H. Hanford, all of Seattle, Wash., and Fleming & Davies, of Shanghai, China, for plaintiff in error.

George H. Whipple, Allen L. Chickering, and Chickering & Gregory, all of San Francisco, Cal., and Jernigan & Fessenden, of Shanghai, China, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and DIETRICH, District Judge.

DIETRICH, District Judge. This case comes here by writ of error from the United States Court for China, for the review of a judgment against the plaintiff in error, hereinafter referred to as the defendant, for the amount of $3,830.89 and costs. The pleadings are the petition or complaint and the defendant's answer thereto. The petition alleges that the plaintiff, H. Diederichsen & Co., is a German firm or company, doing business at Chefoo and Shanghai, China, and elsewhere; that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

on or about the 17th day of October, 1911, it entered into a written contract, whereby it purchased from the defendant 80,000 sacks of flour, to be consigned to plaintiff at Chefoo, China, and to be shipped from Seattle, Tacoma, Portland, San Francisco, or Vancouver, "by a steamer sailing from any of said ports during the month of February, 1912." It is further alleged that the flour was not shipped until about the 14th day of March, and that, upon the arrival of the cargo at Chefoo, the plaintiff accepted it under protest only for the purpose of mitigating the loss which might follow a refusal to receive it. The prayer is for damages alleged to have been sustained by reason of the delay. In its answer the defendant, for want of sufficient knowledge or information, denies that the plaintiff is a German firm or company. It expressly admits "that on or about the 17th day of October, 1911, at Chefoo, China, the plaintiffs and the defendant entered into a written agreement, whereby the plaintiffs purchased from the defendant 80,000 sacks of flour." And it further admits that by the terms of the contract it agreed to ship the flour "by a steamer sailing from any of said ports (the ports named in the complaint) during the month of February, 1912, and consigned to the plaintiffs at Chefoo, China." But it alleges that its obligation in this respect was, by the contract, made "contingent upon strikes, accidents, and other delays unavoidable or beyond the control of the defendant." It further alleges that it chartered the steamship Harpagus for the shipment of the cargo, and that the flour was delivered to Messrs. Dodwell & Co., agents for the Harpagus, upon the wharf at Tacoma, Wash., not later than the 28th day of February, 1912, and that bills of lading covering the shipment were issued to the defendant by such agents prior to or on February 28, 1912. It also denies that the plaintiff sustained any damage.

There was a preliminary hearing for the determination of the question as to whether or not there had been any breach of the contract, and, the decision of the court being favorable to the plaintiff, a subsequent trial was had for the determination of the amount of damages to be awarded; both trials were without a jury. This mode of procedure was in accordance with a written stipulation entered into by the parties and filed in the cause, and, inasmuch as this stipulation is relied upon as a waiver of certain objections, we quote the substantive parts thereof in full:

"(1) That the hearing and trial of said action be confined in the first instance as to the issue whether or not the defendant herein has committed a breach of the contract mentioned in the pleadings herein as to shipment or has committed such a breach of the contract as to shipment as will render it liable in damages to the plaintiffs if damages have in fact been sustained by the plaintiffs. And that if said court should hold, find, and decide that the defendant had not committed a breach of said contract, or such a breach of the same as would render it liable in damages to the plaintiffs, then that such judgment be made final.

"(2) That, in event the court should hold, find, and decide that the defendant had committed such a breach of the said contract as would render it liable if damages had in fact been sustained by the plaintiffs herein by reason thereof, then the above-entitled matter shall be again set for hearing on the issue of damages, and that evidence in relation thereto, both on behalf of the plaintiffs and on behalf of the defendant, may be offered and introduced by the

respective parties, and, after a full hearing and argument thereon, the final judgment and finding of the court be made and entered herein."

[1-3] The first proposition argued involves the question of the identification of the plaintiff or its capacity to sue. It is alleged to be a "German firm or company." In the answer, as we have seen, this averment is denied for want of sufficient knowledge or information. The question was not raised in the lower court, and is not covered by any assignment of error; it is suggested in the brief for the first time. Clearly, if it involves nothing more than absence of proof, we cannot consider it, for, even were there a sufficient assignment, proof upon all but two general issues, which do not include this question, was waived by the written stipulation. It is argued, however, that the point involves something more than a want of proof, and that, it appearing upon the face of the pleadings that the plaintiff is without legal entity, we should take cognizance of the alleged error, even though not assigned. The suggestion that the question is jurisdictional is thought to be without merit, and, that being the case, the objection comes entirely too late. Bort v. McCutcheon, 187 Fed. 798, 109 C. C. A. 558. In its answer the defendant expressly admitted making the contract with the "plaintiffs," and, by waiving proof as to the character of H. Diederichsen & Co., it admitted that it is a German firm or company. If it desired an averment of the names of the persons, other than H. Diederichsen, who compose such firm or company, the objection should have been made by demurrer, on the ground of defect of parties plaintiff or want of capacity to sue. A. M. Gilman & Co. v. Cosgrove, 22 Cal. 356.

It is next argued that the memorandum signed by the defendant upon October 17, 1911, does not constitute the contract or agreement between the parties. The contention is directly in the face of the express admissions and averments of the answer, where it is referred to, and a copy exhibited, as "a copy of said contract." By its answer the defendant also expressly admits that by the terms and conditions of the memorandum the defendant undertook to ship the flour "by a steamer sailing from any of said ports (the ports already named) during the month of February, 1912." The only defenses pleaded are that there is a provision in the memorandum exempting the defendant from liability in case of strikes, accidents, or other delays unavoidable or beyond the control of the defendant; and that the flour was in fact delivered at the wharf, ready for shipment, and a bill of lading covering the same was issued, during the month of February, 1912.

We come now to the two general questions which were reserved by the stipulation and upon which the lower court passed. The first of these is whether or not there was a breach of the contract. The substance of the memorandum of October 17th is substantially as admitted and set forth in the answer. By its terms, the flour was "to be shipped by steamer sailing from either of the following ports: Seattle, Tacoma, Portland, San Francisco, Vancouver, during the month of February, 1912." The memorandum also contains this clause: "All agreements herein contained or implied are contingent upon strikes,

accidents, and other delays unavoidable or beyond" the control of the defendant.

[4, 5] As a matter of fact, the Harpagus, the steamer upon which the shipment was made, did not sail in the month of February. The flour was not fully loaded until March 3d, and the steamer sailed on March 8th. It will thus be seen that there was a breach of the contract in respect to the date of the shipment, unless the delay was due to one or more of the excepted causes specified in the clause of the contract last above quoted. As a general rule of law it is well settled that:

"In the contracts of merchants time is of the essence. The time of shipment is the usual and convenient means of fixing the probable time of arrival, with the view to providing funds to pay for the goods or of fulfilling contracts with third persons." Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; Cleveland Rolling Mill v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920; Mechem on Sales, vol. 1, § 746.

It follows that, unless the case falls within one of the exceptions referred to, Diederichsen & Co. had the right to rescind. The defendant urges that the general clause, "other delays unavoidable or beyond its control," is to be construed as including all delays which, for any cause, were unavoidable or beyond its control, while the plaintiff contends that, under the principle of *ejusdem generis,* it is to be limited to causes of the character of "strikes and accidents." If we assume, without deciding, that its position is well taken, in what light does the defendant stand? By the exercise of reasonable diligence, could it have avoided the delay? It was well known to both parties, when the agreement was entered into, that there was no regular line of transportation between Tacoma or any other one of the specified ports and Chefoo. It was doubtless contemplated that a vessel would be chartered to carry the cargo, and such was the practical construction placed upon the agreement by the defendant itself, for, as we shall see, it depended upon that means of transportation, and undertook to charter a vessel for the purpose. To say the least, therefore, it was its duty to use reasonable diligence to provide suitable means of transportation within the specified time. While the contract was entered into on October 17, 1911, and the shipment was to be made during the following February, apparently no effort was made to charter a vessel until December, and no serious effort until after the middle of that month. At that time, through regular shipping channels, the defendant arranged for the charter of the Indien, a ship which was then in the South Atlantic waters, and which was reported to be due in San Francisco the middle or latter part of January. By letter dated December 30th, the agents for the Indien advised the defendant as follows:

"The steamer is expected to have left Buenos Ayres to-day for San Francisco, via Coronal, and eventually a nitrate port, and we expect her discharge at San Francisco about the 15th/20th February."

It will thus be seen that, if we make a reasonable allowance for the time required for the vessel to reach Tacoma from San Francisco, the margin for loading and sailing in the month of February was very

narrow, and, upon the whole, we agree with the lower court in holding:

"That there was not such a factor of safety as would have been insisted upon by a prudent business man who stood to commit a serious breach of contract in the event of the failure of the ship to reach Tacoma and load and sail during the month."

It is true that apparently the letter of December 30th did not reach the defendant until about the middle of January, but the cables were available to it, and in so important a transaction it is thought that it should either have fully protected its contract with the plaintiff by appropriate guaranties in the charter party, or, if that was impracticable, it should have kept itself advised of the whereabouts of the Indien. And, when it became apparent that her arrival in time to receive the cargo in February was doubtful, it should have sought another vessel. As a matter of fact, it waited until almost the 1st of February before abandoning the Indien, at which late date it may be conceded there was no ship more available than the Harpagus. But diligence at this late hour cannot be regarded as excusing or expiating the earlier negligence. The record contains no direct or satisfactory proof of any accident to which the delay can be reasonably attributed. There is hearsay evidence to the effect that the Indien was detained a short time at Buenos Ayres for repairs, but to relieve the defendant from liability upon such a showing would be to trifle with an important obligation of the contract.

[6] It is next contended that the default was waived. The facts upon which this defense is based, briefly stated, are: Through a bank at Shanghai, the plaintiff established a credit with the Wells Fargo Nevada Bank at San Francisco for the payment of the purchase price of the flour. Defendant was thereupon advised that upon presentation to the Seattle National Bank, at Seattle, of the invoice, policy of marine insurance, and the bill of lading, properly indorsed, its drafts upon the plaintiff would be paid. Upon February 28th the defendant presented to the Seattle bank the requisite papers, and received credit for the full amount. At the time apparently both parties were under the impression that the flour had been actually shipped, whereas the fact was that it was still on the wharf. On April 8th, eight days before the arrival of the Harpagus at Chefoo, the plaintiffs cabled to the defendant that they had learned of the delay in shipment; that their buyers would refuse to receive the goods; and that therefore they would hold defendant responsible for nonperformance.

Even were it assumed that the Seattle bank had the authority to waive the provision of the contract, which we do not decide, it is manifest that there was no intent to make the waiver, and the facts are insufficient to constitute an estoppel. The bank paid the money without knowledge that the flour had not been loaded; nor did it act negligently in proceeding upon such an assumption. Surely, if the defendant inferred from the delivery of the bill of lading that the flour had been loaded, the bank may be excused for so doing. Primarily it was the duty of the defendant to see that the Harpagus sailed before the 1st of March, and of this obligation it is not to be relieved merely because it did not intentionally deceive or mislead the bank.

[7] Upon discovering the error, the plaintiff acted with reasonable promptness in giving notice of rescission. The defendant having thereupon declined to recognize its responsibility, it was the right of the plaintiff to receive the cargo, sell it at the highest obtainable price, and credit the proceeds thereof upon the purchase price paid to the defendant, after making proper deductions for the necessary expenses of handling, storage, interest, etc. Upon an accounting the lower court found that the proceeds, when so credited, were insufficient to cover the purchase price, together with legal interest, and accordingly gave judgment for the deficit. Story on Sales, § 409. The rule adopted was correct, and it is therefore unnecessary to consider evidence touching the relative prices of flour at Chefoo at different times, and the rates of exchange. Such evidence is relevant only to a measure of damages which the lower court properly rejected.

We find no substantial error in the record, and the judgment will therefore be affirmed.