McFARLAND v. SAVANNAH RIVER SALES CO.

(Circuit Court of Appeals, Third Circuit. January 8, 1918.)

No. 2275.

SALES ⬤⟳109—CONTRACT FOR SALE AND PURCHASE OF LUMBER—CONSTRUCTION —BREACH.

Plaintiff contracted to sell and defendant to buy 2,000,000 feet of lumber, to be delivered at plaintiff's mill on barges or vessels furnished by defendant. It was to be paid for "cash less 2 per cent. 30 days from date of shipment." Delivery "to begin prompt and be completed within 75 to 90 days." Shipment "will be made as above, or as nearly as possible, delays by fires, strikes, shipwreck, or other unforeseen contingencies excepted." *Held:* (1) That shipment was required to be made the same as delivery within 90 days; (2) that payment was to be made within 30 days after shipment; (3) that notices by plaintiff in reply to requests for ex-

tension of time that it would expect shipments to be made as per contract, and did not intend to furnish lumber thereon after expiration of the 90 days, did not constitute an anticipatory breach; (4) that defendant was not relieved from the requirement to make shipment within the 90 days under the provision against "unforeseen contingencies," because certain barges which he chartered were unable because of weather conditions to perform their charters, it not appearing that others could not have been obtained; (5) that his failure to make payments and to ship all the lumber within the prescribed time were breaches of the contract which entitled plaintiff to recover for the part performed and to rescind as to the remainder.

In Error to the District Court, of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Action at law by the Savannah River Sales Company against James B. McFarland, Jr., trading as the McFarland Lumber Company. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 242 Fed. 587.

Ralph B. Evans, Frank P. Prichard, and J. Quincy Hunsicker, Jr., all of Philadelphia, Pa., for plaintiff in error.

Owen J. Roberts, C. Allison Scully, and Joseph S. Clark, all of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an action in assumpsit, brought by the Savannah River Sales Company against James B. McFarland, Jr., trading as McFarland Lumber Company, to recover the price for a portion of the contract quantity of lumber delivered by the plaintiff to the defendant.

The defendant is a wholesale lumber dealer in Philadelphia. The plaintiff is a lumber manufacturer with a mill at Wiggins, South Carolina. In October and November, 1915, the parties entered into a contract by correspondence and the exchange of orders and acceptances, whereby the plaintiff agreed to sell and the defendant to purchase 2,000,000 feet of lumber under terms and conditions of which the following only are pertinent to this controversy.

"Terms: Cash less 2 per cent. 30 days from date of shipment.

"Price: F. A. S. barge or vessel Wiggins Mill.

"Delivery: To begin prompt, and be completed within 75 to 90 days.

"Shipment: Shipment will be made as above or as nearly as possible, delays by fires, strikes, shipwreck or other unforeseen contingencies excepted."

As the contract orders bear different dates, it was agreed at the trial that the time for delivery under all orders expired on February 3, 1916.

After the contract was made, the defendant chartered from the Southern Transportation Company, a shipping concern engaged in coastwise trade, four barges to report at Wiggins before February 1, 1916, and load the lumber for transportation to Philadelphia.

The first shipment was made on November 30, and was invoiced to the defendant at the sum of $4525.84. On December 30, the defendant paid $4000.00 on account of the invoice, and held back $525.84

pending the unloading and "counting of the lumber thereon." To this the plaintiff made no protest. On counting the lumber, the defendant found a shortage, which, in money, amounted to $8.23. But he did not then or later remit the plaintiff the difference between this small shortage and the substantial amount retained to cover it. This is one item sued for in this action.

As the barges were slow in arriving at Wiggins, and as the defendant understood that he "must move all stock purchased from (the plaintiff) by February 3d," he endeavored, by letter of December 22, to effect new arrangements with the plaintiff whereby he could secure barges and make shipments after the expiration of the time prescribed by the contract. In this he was not successful, for the plaintiff replied by letter of December 27, as follows:

"I am in receipt of your letter of the 22d, beg to advise you that *we will expect you to move your order as per contract.*"

Continuing, the plaintiff proposed a modification of the contract, which, had it been accepted, would have relieved the defendant of some of his difficulties. It is as follows:

"If, *at the expiration of the contract,* there is *not over one barge,* say 400 to 500 M ft. to be shipped, we will allow you the privilege of either cancelling this balance or advancing 90 per cent. against the same."

The defendant made no reply to this offer until January 31.

During this correspondence the second barge arrived. It was loaded and the lumber invoiced under date of January 1, 1916. Payment was due, it is claimed, 30 days thereafter.

No other barge reported at Wiggins for several weeks. On January 25, the plaintiff wrote the defendant:

"We wish to call your attention to the fact that the time for moving your orders will expire on the 3d of February."

On January 29, the plaintiff replied to a letter of the Transportation Company (not in evidence, but written evidently with reference to delays or difficulties in getting barges to Wiggins), as follows:

"I have yours of the 27th inst. and note carefully all you say.
"This is a matter that we are unable to discuss with you. We made a contract with the McFarland Lumber Co. with the understanding that the lumber would be moved within 60 to 90 days. The 90 days will expire on Feb. 3d, after which date it is not our intention to furnish them any more lumber on this contract."

The Transportation Company sent this letter to the defendant, whereupon, the defendant wrote the plaintiff on January 31, stating, that he would expect the plaintiff to make deliveries after February 3, inasmuch as delays in shipment were due to weather conditions and not to any fault of his or of the Transportation Company, promising to mail on the next day (February 1) a check for 90 per cent. of the invoice of January 1 (without referring to the balance due upon invoice of November 30), and promising also to mail a check for approximately 90 per cent. on the *fifth* barge "as per special arrangements of your letter of December 27th." The letter referred to is the one in which the plaintiff said, that "if there is not over one barge"

of lumber remaining to be shipped "at the expiration of the contract," it would give the defendant the privilege of cancelling the balance or advancing 90 per cent. against it.

At the time of this correspondence, but two barges had been loaded; the third had just arrived; the fourth was nowhere reported; and there was substantially "over one barge" of lumber remaining to be shipped. The plaintiff began loading the third barge. The defendant, evidently fearing or expecting that the plaintiff would refuse deliveries after the expiration of the contract period, did not remit the amount due on the second invoice, as he had promised, but, instead, sent a check for $4000.00 as a 90 per cent. advance against the "fifth" cargo. Not having received the remittance promised, and recognizing the legal purport and effect of accepting an advance on a cargo it was not obliged by the contract to deliver, the plaintiff returned the check, stopped loading, recovered the lumber that had been loaded, and notified the defendant that it rescinded the contract. After correspondence between the parties, which in no way altered their relations or affected their rights, the plaintiff brought this action to recover the balance due upon the first invoice and the whole amount due upon the second.

The court directed a verdict for the plaintiff on the ground that the failure of the defendant to make payments as required by the contract constituted breaches on his part, which gave the plaintiff the right to recover upon the contract in so far as it had been performed and to rescind the contract as to the remainder. The defendant sued out this writ of error.

The assignments of error resolve themselves into the question: Was the defendant obliged to move all the lumber by February 3, 1916, and pay for each shipment within 30 days? Upon this question the defendant submitted several propositions, which we shall consider separately.

First: The contract did not require the defendant to move all lumber by February 3.

In discussing this proposition we shall view the contract as it was originally made. We are of opinion that the defendant's tardy attempt by his letter of January 31 to accept the plaintiff's offer of December 22 to make one deferred delivery, implying and imposing conditions not embraced in the plaintiff's offer, did not constitute an agreement varying the terms of the contract.

In construing the contract, the defendant makes a distinction between the delivery of lumber and the shipment of lumber, maintaining that the duty to deliver devolved upon the plaintiff, while the duty to ship devolved upon the defendant; that the contract specified the time within which the plaintiff was required to make deliveries, but that it did not specify the time within which the defendant was required to make shipments. The defendant maintains, therefore, that to perform its undertaking to make deliveries (which according to the contract were to be F. A. S. defendant's barges and vessels) the plaintiff was bound to pile all the lumber on its wharf by February 3; but, in performing his undertaking to ship, the defendant was not required to take and ship it at any prescribed time theretofore or thereafter. As

we read the contract, we see no distinction between deliveries and shipments, for the contract provided that delivery shall begin and "be completed" within 90 days and shipments shall be made "as above," that is, according as deliveries are begun and completed. It is clear that the parties did not expect deliveries to be made before the defendant had brought his barges to the place of delivery and shipment, for the contract specifically provided for delivery F. A. S. barge or vessel, and the payment of certain charges to the plaintiff's stevedores for loading the same. It is equally clear that the plaintiff could not make a delivery F. A. S. barge or vessel if there was no barge or vessel alongside. It is very certain that the parties did not intend that the plaintiff should pile 2,000,000 feet of lumber on its wharf, there to remain until taken away at the convenience of the defendant. We are of opinion that the contract required the defendant to remove all lumber within the limit of 90 days, or by the agreed date of February 3, unless relieved by another paragraph of the contract presently to be considered.

Second: The contract did not specify a time of payment.

In support of the proposition that the contract did not specify a time of payment, and therefore the defendant committed no breach by non-payment before the plaintiff rescinded the contract, the defendant questions the meaning of the contract terms of payment. These are—"Cash less 2 per cent. 30 days from date of shipment." This, he maintains, is not a requirement upon the defendant to pay cash within 30 days from date of shipment, but is in effect an inducement extended to him whereby he would get 2 per cent. discount if he paid within 30 days and would not get it if he did not pay within that time. He further maintains that as the contract is silent as to date of payment, the date is what the law makes it, namely, a reasonable time after shipment.

We think the terms of payment are in no degree ambiguous. They mean what they say—cash in 30 days with 2 per cent. discount. Failure to pay within 30 days was a breach. Time ordinarily being of the essence of merchants' contracts, there was here a breach justifying rescission. Lawder v. Mackie & Co., 97 Md. 1, 54 Atl. 634, 62 L. R. A. 795; Moss v. Katz, 69 Tex. 411, 6 S. W. 764; Reybold v. Voorhees, 30 Pa. 116; Rugg v. Moore, 110 Pa. 236, 1 Atl. 320. Without relying very insistently upon this contention, the defendant maintains for excuse of its failure to make payments within the time prescribed by the contract, that,

Third: The plaintiff committed an anticipatory breach of the contract.

This proposition is based upon the plaintiff's letter of January 29, notifying the Transportation Company that it would not furnish the defendant any more lumber after the expiration of the contract on February 3. But the plaintiff gave the defendant a similar notice by its letter of December 27, and again by its letter of January 25. These three notices, instead of constituting an anticipatory breach of the contract, show very clearly that the plaintiff proposed to perform its part of the contract and proposed also to make the defendant perform its part or suffer the consequences. These notices were nothing more than

assertions by the plaintiff of its contract right, the first of which, it may be assumed in the absence of an intimation to the contrary, was given in ample time for the defendant to arrange for the arrival and loading of barges within the period prescribed by the contract.

The defendant maintains as a concluding proposition (if the contract be construed as creating reciprocal obligations on the plaintiff and defendant, the one to deliver and the other to ship the lumber within the contract time), that,

Fourth: The defendant was entitled to an extension of time for removing the lumber, if he can show that his failure to move it was due to causes over which he had no control.

By this proposition the defendant seeks to bring himself within the following clause of the contract:

"Shipment will be made as above or as nearly as possible, delays by fires, strikes, shipwreck or other unforeseen contingencies excepted."

This and like expressions in contracts have been the subject of judicial consideration, arising generally under the concluding words of such clauses, which in varying phrases are,—"other unforeseen contingencies," "unforeseen casualties," "other causes," etc. Pacific Metal Works v. Californian Canneries Co., 164 Fed. 980, 91 C. C. A. 108; Hickman v. Cabot, 183 Fed. 747, 106 C. C. A. 183; Connell Bros. v. Diederichsen & Co., 213 Fed. 737, 130 C. C. A. 251; Fish v. Hamilton, 112 Fed. 742, 50 C. C. A. 509; Jackson Phosphate Co. v. Caraleigh, 213 Fed. 743, 130 C. C. A. 257. They have been given judicial interpretation with reference to the peculiar facts of the cases, a full discussion of which appears in the briefs. But we feel that we are not called upon to construe the clause in this contract and determine whether the words "or other unforeseen contingencies," are, or are not ejusdem generis of the preceding particular words, "fires, strikes, shipwreck," and, whether, accordingly, they limit or enlarge the class of casualties specifically mentioned, because, what the defendant offered to prove in order to bring himself within the clause, would not, if admitted, make the clause available to him under either construction. The unforeseen contingency which the defendant sought to introduce in evidence to bring him within this clause (and which the court excluded against his exception, now being reviewed), was weather conditions which prevented two chartered barges, the Raritan and the Tampa, reporting at the plaintiff's mill within the prescribed period.

Assuming it to be true that the defendant had chartered these two barges to move the contract lumber, and that, owing to circumstances beyond his control, they had failed to report within the proper time, that did not excuse him for not performing his contract undertaking. By that undertaking the defendant bound himself to make shipments within a specified time. He was bound, therefore, to supply barges and vessels within that time, barring contingencies that made it impossible. He did not offer to prove that the Raritan and the Tampa were the only barges that could be gotten to perform that service. He was not restricted by the contract, nor was he permitted by the contract to limit his selection of barges to the Raritan and the Tampa. Failing to get the barges he had chartered, he was bound to go elsewhere and obtain

other barges, if available, with which to carry out his part of the contract. That others were available, is not questioned. He had been told as early as December 27, 1915, that he must make his shipments by February 3, 1916, and by his own letter of December 22, he showed that that was his understanding of his obligation. Weather conditions, which prevented two particular barges reaching the plaintiff's mill is not such an unforeseen contingency, within the meaning of the saving clause of the contract, as will excuse him for not getting other barges to the mill within the contract time. Pacific Sheet Metal Works v. Californian Canneries Co., 164 Fed. 980, 91 C. C. A. 108; Connell Bros. v. Deiderichsen & Co., 213 Fed. 737, 130 C. C. A. 251.

We are of opinion that the District Court committed no error in refusing to admit evidence, which, if admitted, would not have brought the defendant within the exception of the contract.

We find with the District Court, that the defendant was bound to ship all lumber by February 3; that the plaintiff committed no anticipatory breach of the contract; that the defendant committed two breaches of the contract by failing to make payments within the time stipulated, and, that, therefore, the plaintiff was entitled to recover on the contract in so far as it had been performed and to rescind the contract as to the remainder.

The judgment below is
Affirmed.