## HIRSCH v. ISAAC JOSEPH IRON CO.

(Circuit Court of Appeals, Third Circuit. February 14, 1922.)

No. 2719.

1. Principal and agent ⬤103(5)—Inspector agreed on in contract held not agent of buyer to accept delivery.

Where a contract for the sale and immediate delivery by defendant to plaintiff of 1,000 tons of rails, subject to inspection by a testing company, was made, as known by defendant, to fill a contract by plaintiff to supply such rails to a third party, the representative of such third party and the inspector of the testing company, who were present at the time and place where the rails were to be delivered and loaded, cannot be held agents of plaintiff, with authority to accept delivery, or to waive any conditions of the contract.

2. Sales ⬤62, 164—Contract held entire; buyer not required to accept partial performance of entire contract.

A contract for the sale and immediate delivery of 1,000 tons of rails is an entire contract, and both time and quantity are of its essence, and the buyer is not required to accept delivery of a smaller quantity, with no offer or intention by the seller to make further delivery within the reasonable limit of time required by the contract.

3. Contracts ⬤316(1)—Waiver of provisions must be with knowledge of material facts.

Waiver of the requirements of a contract must be based on knowledge of the material facts.

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action at law by the Isaac Joseph Iron Company against Henry Hirsch, doing business as the Contractors' Machinery & Supply Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Sachs & Caplan and Charles H. Sachs, all of Pittsburgh, Pa., for plaintiff in error.

Alter, Wright & Barron, of Pittsburgh, Pa., Harmon, Colston, Goldsmith & Hoadly, of Cincinnati, Ohio, Gifford K. Wright, of Pittsburgh, Pa., and A. W. Goldsmith, Jr., of Cincinnati, Ohio, for defendant in error.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMPSON, District Judge.

THOMPSON, District Judge. The Isaac Joseph Iron Company, plaintiff below, hereafter referred to as the plaintiff, and Henry Hirsch, doing business as Contractors' Machinery & Supply Company, defendant below, hereafter referred to as the defendant, on March 7, 1918, entered into a contract, through letters and telegrams, by the terms of which the defendant agreed to make immediate delivery to the plaintiff of 1,000 tons of 56-pound relaying rails with angle bars, subject to the Pittsburg Testing Laboratory inspection, for the price of $55 per ton f. o. b. Durbin, W. Va. The plaintiff sued to recover damages for the defendant's alleged breach of the contract in failing to deliver in accordance with its terms. At the trial the plaintiff's evidence tend-

---

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ed to show that it had entered into a contract with the Miami Conservancy District for the sale of the rails to it for immediate delivery, and that the defendant had notice that the rails were required for the performance of its contract with the Conservancy District. The defendant attempted to supply the rails from track of the Thorny Creek Lumber Company.

The plaintiff's representative, Hoeffer, went to Durbin on March 9, and, finding no cars, had three cars placed for loading. Monk, an inspector of the Pittsburg Testing Laboratory, was there to inspect the rails, and the representative of the Conservancy District, Kramer, was upon the ground looking after the interests of the Conservancy District. The inspection and loading of the rails had begun on March 12th, when Hoeffer left Durbin, and he, having learned that a sufficient quantity of rails was not available in the Lumber Company's tracks, and that there was no possibility of those available being ready for shipment within five or six weeks, on the 13th and 14th by letter demanded information from the defendant of the whereabouts of the rails to make up the balance of 1,000 tons. On March 18th three cars, containing 110 tons of rails that had passed Monk's inspection, were shipped.

Meanwhile the plaintiff, having received no information from the defendant concerning other rails to fill the contract, and having been informed that but 140 tons altogether were available for immediate delivery, owing to the fact that the Thorny Creek Lumber Company refused to allow any more rails to be taken up until it had finished hauling out its logs, which was likely to take several months, on March 20th notified the defendant that it had defaulted in its contract for immediate delivery of 1,000 tons, that it refused to accept the three carloads shipped, and that it would hold the defendant liable for damages for breach of its contract. The defendant offered no evidence, moved for a nonsuit, which was refused, and thereupon presented a point for a directed verdict for the defendant, which was also refused. Upon a verdict for the plaintiff, and a refusal of a new trial, the defendant prosecuted his writ of error, assigning as error the refusal of the defendant's request for binding instructions and the entry of judgment upon the verdict.

[1] It is contended on the part of the defendant that the plaintiff breached the contract by its refusal to accept the three cars. It is argued that Monk and Kramer were the agents of the plaintiff, and that, inasmuch as Monk accepted the three cars of rails on inspection, and Kramer was present at their loading and rode with them to Englewood Junction, Dayton, Ohio, and the cars had been placed on March 11th on Hoeffer's order, the facts constitute a delivery to and acceptance by the plaintiff and a modification of the contract as to time and quantity. Unless the defendant is right in his contention that Monk and Kramer were acting as agents for the plaintiff, his entire case falls, for it is dependent upon that hypothesis. But there is no evidence to sustain it.

[2] Monk's sole authority was to represent the Pittsburg Testing Laboratory in the inspection provided in the contract. Kramer was

there to look after the interests of the Miami Conservancy District as its representative. No inference can be drawn from the evidence that either of them had authority to accept a quantity of rails less than provided in the contract. It was an entire contract for 1,000 tons for immediate delivery (Norrington v. Wright, 115 U. S. 203, 6 Sup. Ct. 12, 29 L. Ed. 366), and time and quantity were both of its essence. There was no evidence of waiver of time or quantity on the part of the plaintiff, neither Monk nor Kramer having authority to bind it, by virtue of which the trial judge could have held as matter of law that there was an acceptance of part of the quantity. The evidence shows that Hoeffer did not know, until after he left Durbin and the cars had been loaded, that the defendant had made no provision for filling the contract, except from the Thorny Creek Lumber Company's tracks. As to the placing of the cars, the evidence shows that Hoeffer ordered them placed, when he found that none had been ordered by the defendant, and that action on his part has no further significance.

There was no evidence in the case of any tender of other rails to make up the 1,000 tons, or of any offer to perform, except from the Thorny Creek Lumber Company's, tracks. It is perfectly palpable that the defendant could not, and did not intend to, perform its agreement, except by the immediate shipment of 110 tons, and of the rest at an indefinite time in the future. Under these circumstances, the plaintiff was not bound to accept a partial shipment, and its refusal to do so was not a breach of the contract upon its part. Cleveland Rolling Mill v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920; McFarland v. Savannah River Co., 247 Fed. 652, 159 C. C. A. 554.

[3] If there was a modification of the contract, it must have been based upon waiver of the right to have immediate delivery made of the entire quantity. Waiver must be based upon knowledge of the material facts. Cable v. Insurance Co., 111 Fed. 19, 49 C. C. A. 216. The evidence in this case shows that, while Hoeffer knew of the conditions concerning the rails in the Thorny Creek Lumber Company's tracks, he did not know, although he inquired of the defendant, that it had made no other provisions to provide the full quantity of rails. Repeated inquiries on his part were, so far as the evidence shows, ignored by the defendant. The learned trial judge correctly refused the defendant's request for binding instructions, and left the case to the jury after an adequate review of the evidence, under instructions to which no exceptions were taken, and in which we find no error.

The judgment is therefore affirmed.