S. H. BENJAMIN FUEL & SUPPLY CO. v. BELL UNION COAL & MINING CO.*

(Circuit Court of Appeals, Third Circuit.  October 4, 1922.)

No. 2854.

1. Sales ⬥180(2)—Buyer could not excuse breach of contract by fact that seller violated contract after having ignored such breach.

Buyer, who did not rescind contract on the ground that seller did not make all the required deliveries, but who accepted the coal delivered and paid seller therefor, could not excuse its failure to make payment within the required time, on the ground that the seller had violated the contract, since one breach does not neutralize the other.

2. Contracts ⬥316(4)—One party may not ignore breach by other party, and then plead it as a set-off to his own breach.

A party to a contract injured by a breach may disregard the breach or terminate the contract, but he may not ignore it and plead it as an offset to his own breach.

3. Sales ⬥82(4)—Time of payment held of essence of contract.

Under contract for sale of 50,000 tons of coal to be delivered in equal monthly installments between certain dates, providing for payment on the 15th day of the month for all coal shipped during the preceding month, the time of payment was of the essence of the contract.

4. Contracts ⬥301—Performance after specified time not a performance of a contract, where time is of the essence unless assented to.

Generally, where time is of the essence of the contract, performance after such time is not a performance of the contract, unless assented to by the other party.

5. Sales ⬥81(6)—Contract for sale of coal held not to require seller to ship certain portion of output monthly.

Where contract for the sale of 50,000 tons of coal, to be delivered between certain dates in equal monthly installments, provided that, in case

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 260 U. S. —, 43 Sup. Ct. 251, 67 L. Ed. —.

there was a severe car shortage or other causes reducing the production of mines, the amount to be shipped on one contract was to be one-third of the output of the mines, the seller in the event of a car shortage reducing production was not required to ship one-third of the monthly output during the month, but merely required to sell to buyer one-third of the output during the existence of the abnormal conditions.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by the S. H. Benjamin Fuel & Supply Company against the Bell Union Coal & Mining Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Edward Hopkinson, Jr., and Joshua F. Bullitt, both of Philadelphia, Pa. (Dickson, Beitler & McCouch, of Philadelphia, Pa., of counsel), for plaintiff in error.

Daniel J. Shern and Graham & Gilfillan, all of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is a proceeding by the plaintiff in error to review the judgment of the District Court based on the verdict of a jury, awarding damages for breach of a contract. By its terms defendant agreed to sell and plaintiff to purchase 50,000 tons of coal, 25,000 tons of two-inch screenings at $2.40 per ton, and 25,000 tons of larger prepared sizes at $3.50 per ton, between May 10, 1920, and April 1, 1921, "in equal monthly installments." The contract provided that, since the amount of coal contracted for was about one-third of the production of the Bell Union mines, in case there was "a severe car shortage or other causes" reducing the production of the mines, the amount to be shipped on the contract was to be one-third of the output of the mines. Settlement was to be made on the 15th day of the month for all coal shipped during the preceding month.

The contract was executed April 14, 1920. In May, 1920, the defendant shipped 14 cars of coal, averaging 47 tons per car. This was not paid for on June 15th, but $1,873.48 was paid on June 17th, and the balance of $1,644.20 was paid on June 24th. In June the defendant shipped 41 cars, averaging 42 tons per car, which was valued at $5,318.81. The president of the defendant company testified that, on or about July 8th he told Mr. Pagenkopf, sales manager of the plaintiff company, that instead of paying on the 15th of June, plaintiff paid one part on June 17th and the other part on the 24th; that he did not want that to occur again, and, if it did, "this contract will be canceled automatically. * * * Get this; I must have my money or the contract is canceled." The June deliveries, however, were not paid for until July 21st, and then only after defendant wrote on July 17th, saying that it was disappointed in not receiving the check, and asking that it be sent by return mail, and again two days later stating that, "We need our money, and we need it on the 15th of the month." After some contentions between the parties following this payment, the defendant refused to ship any more coal to the plaintiff, on the ground

that it had breached the contract by not paying for the June deliveries on July 15th, and later terminated the contract.

The plaintiff contends, inter alia, that the defendant had already breached the contract by its failure to ship either the monthly installments from May 10th to June 30th, or, since there was a severe car shortage, one-third the output of the mines to which it was entitled under the contract during that time, and therefore defendant itself had no right to breach the contract, even though the plaintiff was in default in monthly payments. It further contends that, in addition to its own breach, defendant waived any default on the part of the plaintiff by accepting the check on July 21st. There are many assignments of error, but this case turns upon who breached the contract.

[1, 2] The failure of the plaintiff to pay on the 15th of June and July was not induced by defendant's alleged failure to make the required deliveries, for the plaintiff did not know that it had not received one-third of the output of the mines from May 10th to June 30th until some time in the month of August. If the plaintiff did not receive one-third of the output during that time, if it had known that fact, it could have rescinded the contract and sued for damages, or affirmed the contract and deducted the amount it had lost because of short deliveries from what it owed defendant for the coal already delivered, and then paid the difference. In ignorance of the alleged short deliveries, it could do neither, but it could and should have paid for the June deliveries on July 15th. This it deliberately failed or refused to do, though defendant was actually clamoring for its money due on the coal it had delivered. It now seeks to justify its failure to pay in accordance with the contract by the defaults of the defendant of which it was at that time ignorant. In other words, it argues that one breach justifies another, and when both parties to a contract separately breach it, one breach neutralizes the other, and results in the affirmance of the contract; that the second breach, deliberately made in ignorance of the first, cures the first, and the contract stands just as though no breach had been made, in spite of the determination of the party damaged by the second to terminate it. We are unable to assent to this proposition. One breach has no neutralizing effect upon the other. The party injured by a breach may disregard it or terminate the contract, but he may not ignore it and plead it as an offset to his own breach.

[3, 4] Payment at the stipulated times was very important to defendant. In conducting its large business it had to know whence it would get money to meet its obligations. Time of payment was of the essence of the contract. Hull Coal & Coke Co. v. Empire Coal & Coke Co., 113 Fed. 256, 51 C. C. A. 213; Grigg v. Landis, 19 N. J. Eq. 350; Shin et al. v. Roberts, 20 N. J. Law, 436, 43 Am. Dec. 636; Owen v. Giles et al., 157 Fed. 825, 85 C. C. A. 189; Meier Dental Mfg. Co. v. Smith et al., 237 Fed. 563, 150 C. C. A. 445; McFarland v. Savannah River Sales Co., 247 Fed. 652, 656, 159 C. C. A. 554. The general rule of law is that, where time is of the essence of the contract, performance after such time is not a performance of the contract, unless assented to by the other party, 13 Corpus Juris, 681, and failure of the plaintiff to pay on July 15th was not assented to.

The learned trial judge under proper instruction as to the law submitted to the jury the questions of waiver and breach by the plaintiff in not paying according to the contract and the consequent damages depending upon its findings. The price of coal advanced tremendously after the contract was executed. Screenings, it is alleged, rose to $10, and prepared sizes of coal to $12 per ton. Plaintiff averred that it was damaged by the refusal of the defendant to perform the contract to the extent of $318,316.39, demanded in this suit. The jury rendered a verdict in the sum of $2,016 on this demand combined with another demand in this suit for $2,352 on another contract. The verdict settles the issues. Starr v. United States, 153 U. S. 614, 625, 14 Sup. Ct. 919, 38 L. Ed. 841. If the plaintiff breached the contract on July 15th as the jury found, the evidence of prices of coal on forward contracts and the points affirmed and refused relative thereto are immaterial here.

As an element of damage plaintiff contends that, however the questions of waiver and breach for nonpayment on July 15th may be determined, it is entitled to the difference between the contract price and the market price of coal on that portion of the one-third of the output of the mines which it alleges the defendant failed to deliver to it from May 10, 1920, to June 30, 1920.

As already stated, the evidence establishes, and we take it to be admitted, that the price of coal was higher during that period or on May 31st and June 30th, the days when plaintiff, according to its contention, had the right to demand that the full one-third of the coal mined that month be shipped, than the contract price, though there is a difference among the witnesses as to exactly how much higher it was. It is admitted that there was a severe car shortage in May and June. The plaintiff, contending that it had been established by undisputed evidence that defendant did not ship to it one-third of the output of the mines from May 10, 1920, to June 30, 1920, requested the trial judge to charge that:

"Under all the evidence you must find that plaintiff is entitled to damages for the defendant's failure to deliver one-third of his admitted output to plaintiff for the period May 10 to May 31, 1920, and for the month of June, 1920."

[5] The request was refused. The contract provided that the defendant agreed to sell and the plaintiff to purchase 50,000 tons of coal between May 10, 1920, and April 1, 1921, "in equal monthly installments." The paragraph of the contract containing this provision presumed normal conditions, and the 50,000 tons purchased were doubtless to be shipped "in equal monthly installments" during the contract period. But the contract provided also for abnormal conditions:

"Should there be a severe car shortage or other causes beyond the control of the Bell Union Coal & Mining Company, by which the production in said mines is reduced, the amount of coal shipped on this contract shall be one-third of the output."

It is significant that this paragraph does not contain the provision of "equal monthly installments." During such abnormal times, the defendant by such omission saw to it that the contract did not obligate it

to ship to the plaintiff one-third of the output "in equal monthly installments." While there were severe car shortages or embargoes· on the Illinois Central Railroad, over which coal from the mines to Milwaukee had to be sent, it might be impossible to ship one-third of the output of the mines every month to the plaintiff. During that time the plaintiff was entitled to one-third of the output of the mines, but the defendant was not compelled by the contract to ship that amount monthly, as plaintiff contends. The car shortage might prevent it from doing so. The trial judge submitted to the jury the question of whether or not the defendant shipped less coal during May and June than it was required under the contract to ship, and the finding of the jury was in accordance with the terms of the contract. If the plaintiff had not breached the contract, it could have demanded damages if the defendant had not finally shipped to it one-third of its output during the existence of the severe car shortage; but, having defaulted in making the required payments, it by its own default lost the right to demand thereafter that defendant deliver one-third of the previous product, and accordingly the learned trial judge properly declined to charge the third point.

We have carefully considered all the other assignments of error, but do not find error in any of them, and therefore the judgment of the District Court is affirmed.