JACKSON PHOSPHATE CO. v. CARALEIGH PHOSPHATE & FERTILIZER WORKS.

(Circuit Court of Appeals, Fourth Circuit. February 4, 1914.)

No. 1180.

SALES (§ 81*)—CONTRACT—CONSTRUCTION—PROVISION FOR DELAY—CAR FAMINE.

Plaintiff contracted to sell defendant 2,000 tons of phosphate rock, shipment to begin September 1, 1907, at the rate of 100 or 200 tons weekly, buyer's option, until the entire quantity is completed, all to be subject to railroad furnishing equipment, etc., no responsibility to accrue to the seller if prevented from the delivery of any portion by destruction of the plant, strikes, labor desertions, or other hindrances of like character not under the seller's control, and for a like cause the buyer shall not be required to take rock not in transit; but, when a reasonable time shall have elapsed in which to overcome such hindrances, the party on whom the disability rests shall be required to carry out the conditions thereof. There was a car famine during September and October and until the middle of November, 1907, and plaintiff was able to ship but a small portion of the requirements of those months, and wrote defendant thereof, stating that the rock was not shipped the previous week because the railroad itself was unable to furnish cars, but that plaintiff would send the rock as soon as possible. No reply was made to such letter, and on November 12th defendant canceled the contract. After November 15th plaintiff was able and willing to ship the rock in accordance with the contract but its tender thereof was refused. Held, that the proviso as to shipments should be construed as relating to the time of delivery and not as to the life of the contract, and hence plaintiff, after the termination of the car famine, was entitled to a reasonable time to deliver the rock, and defendant's cancellation of the contract and refusal to receive further shipments in accordance with the tender constituted a breach thereof.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 217–223; Dec. Dig. § 81.*]

In Error to the District Court of the United States for the Eastern District of North Carolina, at Raleigh; H. G. Connor, Judge.

─────────────────────────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Jackson Phosphate Company against the Caraleigh Phosphate & Fertilizer Works. Judgment for defendant, and plaintiff brings error. Reversed.

The plaintiff firm is a copartnership engaged in mining and manufacturing phosphate rock at Mt. Pleasant, Tenn., and the defendant is a North Carolina corporation engaged in manufacturing fertilizer at Raleigh, N. C. The plaintiff in error will be referred to as "plaintiff" and the defendant in error will be referred to as "defendant"; such being the respective positions they occupied in the court below.

A contract was entered into on the 15th day of July, 1907, between plaintiff and the defendant, by which it was agreed that the plaintiff was to sell to defendant 2,000 tons (10 per cent. more or less, seller's option) of Tennessee phosphate rock at $6 per ton of 2,240 pounds f. o. b. cars at mines. It was also provided that sampling should be done as to the quality of the rock, and the weighing of the same, the terms of payment and liability, and for other contingencies not involved in this appeal. Among other things, the contract contained the following stipulations, to wit:·

"Shipments.—Shipments shall be made as follows: Beginning September 1, 1907, at rate of one or two hundred tons weekly, buyer's option, until the entire quantity is completed, but all to be subject.to railroad furnishing equipment and to weather working days at point of shipment.

"General Conditions.—Existing Mt. Pleasant, Tenn., tariff rate, $3.01 per ton of 2,000 pounds, will be inserted in the bill of lading when so instructed, but will not be guaranteed by seller. Routing will be inserted in bill of lading when so instructed, but seller will not be responsible for diversion of cars in transit. No responsibility to accrue to seller if prevented from delivery of any portion of this contract by destruction of plant, strikes, labor desertions or other hindrances of like character not under seller's control; and for like cause buyer shall not be required to take rock not in transit; but when a reasonable time shall have elapsed in which to overcome said hindrances the party upon whom the disability rests shall be required to carry out the conditions hereof."

It appears from the evidence that there was a car famine throughout the country during the months of September, October, and until the middle of November, 1907, and that this condition existed at Mt. Pleasant, Tenn., the place of shipment. It further appears that the plaintiff made diligent efforts to get cars in which to ship the phosphate rock in pursuance of this contract, but was unable to do so. It further appears that every car that could be procured by plaintiff from the railroad was put into requisition to convey the phosphate rock to the defendant. Owing to the car famine, it appears that during the month of September, 1907, the plaintiff was only able to ship six cars to the defendant, and that only three were shipped during October, and that up to the 12th of November only three cars could be shipped. There was a total of 12 cars of 310.8 tons of phosphate shipped during the time, leaving a balance of 1,889.2 tons unshipped. The plaintiff wrote the defendant on the 16th day of September, 1907, stating that the rock was not shipped the previous week, "because the railroad itself was unable to furnish us cars. We will send you rock as fast as possible." The defendant made no reply to this letter. On the 12th day of November the defendant wrote a letter canceling the contract. There was much correspondence between the parties subsequent thereto to the effect that plaintiff was able, ready, and willing at all times, to ship the rock; that it had caused the rock to be dug from its mines and to be manufactured for shipment; and that the delay was due to causes entirely beyond its control, which it contends was provided for in the contract, to wit, the failure of the railroads to furnish necessary equipment.

It is also shown by the evidence that there was a money panic during the fall of 1907 and that the price of phosphate rock greatly declined, which enabled fertilizer factories to procure a cheaper phosphate rock from the Florida beds. It also appears that the car famine began to subside about the middle of November and that the plaintiff could have supplied all the phosphate rock called for in the contract during the months of November and December. It

also was shown that the plaintiff had rock on hand to ship, but the defendant positively refused to accept this rock and treated the contract as broken by the plaintiff.

As to the amount of damages to which plaintiff was entitled to recover, it was shown that the seller's contract price to the defendant was $6 per ton; that the cost of manufacturing was $3.50 per ton; that after the car famine in November, 1907, the market price was $3.50 per ton; that this was about equal to the cost of manufacturing; that the difference between the contract price and the cost of manufacturing under the contract would entitle plaintiff to a profit of $2.50 per ton; that, there being 1,889.2 tons undelivered, the damages which plaintiff sustained would be $4,722 and interest.

The defendant offered no evidence, and the testimony of the plaintiff was undisputed. At the close of plaintiff's testimony, the court below directed a nonsuit, and a writ of error was sued out to this court.

Robert W. Winston, of Raleigh, N. C. (John W. Hinsdale and Winston & Biggs, of Raleigh, N. C., on the brief), for plaintiff in error.

R. N. Simms, of Raleigh, N. C. (James H. Pou, of Raleigh, N. C., on the brief), for defendant in error.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

PRITCHARD, Circuit Judge (after stating the facts as above). The principal question involved herein is as to the proper construction of that portion of the contract which relates to shipments. Counsel for the respective parties differ widely as to the construction to be placed upon this clause.

It is contended by counsel for plaintiff that by this contract the defendant agreed to purchase 2,000 tons of phosphate rock, 10 per cent. more or less at the seller's option, at the price of $6 per ton, 2,240 pounds f. o. b. cars at mines of plaintiff; that, while there was no arbitrary date fixed on or before which all this material was to be shipped, nevertheless it was agreed that the rock was to be shipped at the rate of 200 tons per week unless hindered or delayed by either shortage of cars or the weather; that the proviso contained in this clause of the agreement was intended to protect plaintiff in the event either of the contingencies enumerated should happen and thus prevent delivery at the rate of 200 tons per week; that under this clause defendant could have on the 12th day of November or as soon thereafter as the car famine subsided required plaintiff to continue weekly shipments until the entire amount of rock called for in the contract had been delivered; that this being so, it would be manifestly unjust to permit defendant to cancel the contract when it clearly appears that the rock was only to be shipped at the rate of 200 tons a week in the event that the shipper was not delayed by lack of cars; that this is a valid proviso and is as much a part of the contract as any other clause contained therein; and that to construe the same so as to do equal and exact justice between the parties it means that under the evidence in this case the plaintiff was entitled to a reasonable time after it could obtain cars within which to ship the balance of the rock called for in the contract. In other words, that the plaintiff entered into a contract by which it was agreed that 200 tons of rock should be shipped each week for ten successive weeks from the 1st day of September, 1907,

until the amount of rock was delivered to the defendant. If plaintiff was not able to obtain cars to make these shipments, it would not be liable for damages for failure so to do, but it could not require the defendant to accept any of the rock which had not been shipped in time, and at the end of the full period of ten weeks plaintiff's right to deliver any more rock ceased. The failure to deliver in full within that time constituted such a breach as entitled the defendant to declare the contract as at an end, although, as the failure was the result of the plaintiff's inability to obtain cars, it did not justify a suit by the defendant against the plaintiff.

The defendant, however, insists that, as respects this clause, time is the essence of the contract, and a failure on the part of the seller to deliver within the time specified justified the defendant in rescinding the same and refusing to accept the rock. In other words, that the plaintiff entered into an unconditional contract by which it was agreed that 200 tons of rock should be shipped each week from the 1st of September, 1907, until the amount of rock was delivered to the defendant; that there was to be no interruption of shipments; and that any interruption so as to prevent the same being made within the time contemplated by the contract constituted a breach of the same by the plaintiff so as to entitle defendant to rescind the contract and thus avoid taking the remainder of the rock that might be shipped after that date.

It is further insisted by the defendant that as it had only shipped a small portion of the order (about 232 tons) while the same was needed by the defendant company at the rate specified, to wit, 200 tons a week, that the defendant company had been able to supply itself with rock on account of the nonshipment of this contract, and that therefore it was justified in canceling the contract on the 12th day of November, 1907.

The defendant also contends that the evidence tends to show that during the months of September and October the plaintiff shipped out a great many cars to their customers; that in September they shipped out 35 cars and only 6 of these went to the defendant company; that in October they shipped out 30 cars, and only 3 of these went to the defendant company; that in November they shipped out 29 cars, and only 3 of which went to the defendant company.

In order to correctly determine the intention of the parties to a contract, it is necessary to consider its purpose, its subject-matter, and the situation of the parties at the time it was executed.

The evidence in this case shows that at the time this contract was entered into by the parties the plaintiff was engaged in shipping phosphate rock and the defendant was engaged in using the same for the manufacture of chemical fertilizer. It is to be presumed that the parties thereto were fully aware of the fact that there might be more or less delay in making the shipments due to the causes therein enumerated.

Undoubtedly the defendant desired the shipments made as promptly as possible, and no doubt the plaintiff was anxious to make the shipments as specified unless the unforeseen contingencies provided against should happen, and it was but natural that the plaintiff should take the precaution to insert the proviso that the shipments should be made

in the manner agreed upon unless the plaintiff, as in this instance, should be prevented from doing so by the failure on the part of the railroad to furnish cars promptly.

Inasmuch as this proviso was inserted and the defendant acquiesced in the same, we are forced to the conclusion that it was the intention of the parties that if the plaintiff was not delayed on account of the causes mentioned that the shipments should be made continuously until the entire amount was shipped, but if, on the other hand, there should be any delay caused by car shortage or bad weather, the plaintiff would be entitled to deliver the rock within a reasonable length of time after the car service had assumed its normal condition.

Among other things, it appears from the testimony, as we have stated, that on the 16th day of September, 1907, the plaintiff wrote a letter in which defendant was informed that rock could not be shipped during the previous week, "because the railroad itself was unable to furnish us cars. We will send you rock as fast as possible."

Not receiving any reply, plaintiff was in a sense justified in inferring that defendant acquiesced in the situation. If the defendant at that time intended to place the construction upon the contract which it now insists upon, it should have promptly notified plaintiff that, unless shipments were made within the time limit for which defendant now contends, it would promptly cancel the contract. Under the circumstances, it was but natural that plaintiff should have continued mining operations with a view of fulfilling the contract in accordance with its understanding of the same.

The proviso as to shipments from the very nature of things must have been intended to relate to the time of delivery, and we cannot understand upon what theory it could be construed to relate to the life of the contract. To give it this interpretation places the parties upon a footing where the rights of each are safeguarded and protected. In this instance it must be observed that the promise of the seller is conditional.

In the case of Coal Co. v. Ice Co., 134 N. C. 574, 47 S. E. 116, the Supreme Court of that state said:

"But there was one, and only one, limitation upon this otherwise absolute undertaking, and that limitation is found in the clause of dispensation, as it may be called, which exempted the plaintiff from liability for nonperformance, if by strike or other uncontrollable causes it should become unable to comply with its contract."

In the case of Cottrell v. Smokeless Fuel Co., 148 Fed. 594, 78 C. C. A. 366, 9 L. R. A. (N. S.) 1187, this court held that where one charges himself with an obligation possible to be performed he must make it good, and that unforeseen difficulties, however great, will not excuse him. It was also stated by the court that the rule as announced was subject to the qualification that, where a contract contains a limitation upon an otherwise absolute undertaking, one will be relieved from such obligation "to the extent that such conditions rendered it unable to perform the contract fully, and to this extent only."

The case of Fish v. Hamilton, 112 Fed. 742, 50 C. C. A. 509, was an action for a breach of contract. The contract contained a strike

provision, and it is insisted that a strike terminated the life of the contract. In disposing of the matter the court said:

"We concur in the opinion of the court below that the provision effects the terms of delivery only, and that the seller was bound to deliver within a rea-- sonable time after the termination of the strike."

In 35 Cyc. 249, the rule announced is as follows:

"Where the contract provided that delivery shall be subject to strikes, the existence of a strike merely suspends deliveries during the strike and does not terminate the contract, and the seller is therefore bound to resume deliv- eries after a reasonable time after the strike has ceased."

Indeed, the rule is so well established that we do not deem it neces- sary to cite further authorities.

A careful consideration of the authorities relied upon by defend- ant leads us to the conclusion that they do not apply to the case at bar.

As we have stated, under this provision of the contract the defend- ant could have required the plaintiff to make the balance of the ship- ments within a reasonable time, and, such being the case, we think that such provision likewise inures to the benefit of the plaintiff, and that therefore the plaintiff was entitled to deliver the rock within a reasonable length of time after cars were to be had, and that the ef- fort of the defendant to cancel the contract and its refusal to accept further deliveries under the same entitles the plaintiff to recover the amount sued for in this action.

In view of what we have said, it follows that the court below erred in holding that the plaintiff was not entitled to recover.

For the reasons stated, the judgment of the lower court is reversed, and the case will be remanded for further proceeding in accordance with the views herein expressed.

Reversed.