## 11241

## UNION BLEACHING & FINISHING CO. v. BARKER FUEL CO.

### (117 S. E., 735)

1. Sales—Provision for Delivery of Coal at Point Where Purchaser Located Held not Affected by Provision That Price

---

Note: On effect of contract to ship goods F. O. B on vendor's liability as to holding and transportation charges, see note in 62 L. R. A., 796.

On what amounts to delivery of goods F. O. B., see note in 16 A. L. R., 597.

WAS F. O. B. MINES.—Under a contract for the purchase of coal from a mining company, which the seller agreed to ship to the purchaser at the city where purchaser was located, the point of delivery, in the absence of any qualifying provisions, was where the purchaser was located, and a provision in such a contract that the price was "f. o. b. mines" was not such a qualifying provision, but merely a declaration as to who was to be liable for freight charges.

2. SALES—MEASURE OF DAMAGES FOR SELLER'S BREACH STATED.—The measure of damages for seller's breach is the difference between the market price at the time and place of delivery under the contract and the contract price.

3. SALES—UNNECESSARY FOR BUYER TO PROVE PRICE PAID BY IT FOR COAL WHICH SELLER FAILED TO DELIVER.—In buyer's action for damages for seller's failure to deliver coal, it was not necessary for the plaintiff to prove the "delivered price of the coal bought" by it; this not being a necessary element in proving the amount of damages.

4. APPEAL AND ERROR—APPELLANT CANNOT COMPLAIN THAT DAMAGES PROVED AGAINST HIM WERE NOT AS GREAT AS MIGHT HAVE BEEN SHOWN.—In action by buyer of coal for seller's failure to deliver, where plaintiff, instead of proving the "delivered price" of coal brought by it to supply its needs at a city where it was located, offered invoices of coal bought elsewhere by it to supply the defendant's default, such invoices were evidence of what the plaintiff paid for the coal exclusive of the freight, and showed at least a part of the delivered cost, and defendant appellant was not in position to complain that the cost shown was not as great as might have been shown.

5. APPEAL AND ERROR—SALES—SELLER OF COAL ON BREACH HELD LIABLE FOR FREIGHT ON COAL PURCHASED ELSEWHERE ONLY TO EXTENT OF EXCESS OVER FREIGHT FROM MINE; PLAINTIFF'S FAILURE TO PROVE ITEM OF DAMAGE NOT PREJUDICIAL TO DEFENDANT.—In buyer's action for damages for seller's failure to deliver coal, where, under a contract, plaintiffs were required to pay the freight from the mines, they could not recover the freight on coal purchased elsewhere, except to the extent that this exceeded the freight from defendant's mine, and that plaintiff's evidence did not show the amount of such excess was not a matter of which defendant appellant could complain.

6. SALES—IN BUYER'S ACTION FOR FAILURE TO DELIVER COAL, BUYER MUST SHOW MARKET VALUE AT POINT OF DELIVERY OR NEAREST AVAILABLE MARKET.—In buyer's action for seller's failure to deliver coal, if the point of delivery was at the mines, it was incumbent on plaintiff to show the market price there if there was

a market other than the price fixed by the mine itself; otherwise market price at the most available market.

7. SALES—IN BUYER'S ACTION FOR DAMAGES FOR FAILURE TO DELIVER COAL, PLAINTIFF'S DAMAGES HELD FOR JURY.—In buyer's action for damages for seller's failure to deliver coal, where breach of contract appeared, the amount of plaintiff's damages *held* for the jury.

8. APPEAL AND ERROR—EXCEPTION ASSIGNING ERROR IN ADMISSION OF TWO EXHIBITS HELD VIOLATION OF RULE LIMITING EXCEPTIONS TO ONE PROPOSITION OF LAW OR FACT.—An exception assigning error in the admission of two exhibits is obnoxious to rule 5, § 6, of the Supreme Court (90 S. E., vii), requiring each exception to contain a concise statement of one proposition of law or fact which the Court is' asked to review.

9. SALES—ITEMIZED STATEMENTS AS TO PURCHASES ELSEWHERE HELD ADMISSIBLE IN BUYER'S ACTION FOR DAMAGES FOR SELLER'S FAILURE TO DELIVER COAL.—In buyer's action for damages for seller's failure to deliver coal, a statement purporting to show in itemized form purchases by plaintiff outside of the contract, giving the names of the sellers, prices, and quantities purchased, and indicating the difference between the purchase price and contract price, *held* admissible as against the objection that it did not agree with the invoices evidencing such purchases.

10. TRIAL—DENIAL OF REQUESTED INSTRUCTION COVERED BY ANOTHER GIVEN NOT ERROR.—Denial of a particular requested instruction *held* not error where another instruction, embodying the proposition contended for, has been given.

11. SALES—INSTRUCTION AS TO OBLIGATION TO SHIP AFTER EXPIRATION OF CONTRACT TO MAKE GOOD PREVIOUS DEFAULT HELD PROPERLY DENIED.—In buyer's motion for damages for seller's failure to deliver coal, it was proper to refuse a requested charge for defendant that "in no event was the defendant under any obligation to ship coal after the expiration of the contract to make good any such default, if such default existed," the rule that the seller is not obligated to deliver after the time limit of the contract being inapplicable, since the seller had set up as an excuse for nondelivery the existence of strikes, car shortage, etc., for the rule in such cases is that the obligation to deliver is simply suspended, to be resumed after normal conditions recur.

12. APPEAL AND ERROR—DENIAL OF INSTRUCTION WHICH DOES NOT COMPLY WITH RULES ASSUMED BASED UPON SUCH NONCOMPLIANCE.—Where a request to charge is tendered orally at the conclusion of the Court's charge, and not in comformity with Circuit Court rule No. 11, it will be assumed that the failure to respond to it was based on noncompliance with the rule.

13. APPEAL AND ERROR—NO REVIEW OF VERDICT BECAUSE IT IS EXCESSIVE OR CONTRARY TO THE EVIDENCE.—The Supreme Court is without jurisdiction to review a judgment on the ground alone that the verdict on which it is based is excessive or contrary to the evidence.

Before ANSEL, J., County Court, Greenville, 1922. Affirmed.

Action by Union Bleaching & Finishing Co., against Henry S. Barker *et al.*, partners as Barker Fuel Co. Judgment for plaintiff and defendants appeal.

The following are defendant's exceptions to the judgment:

First, Error in not directing a verdict for defendant for $2,260.06 because said sum was admittedly due defendants for the coal shipped after the expiration of the contract, and because there was no competent evidence to show any damage to plaintiffs arising out of the contract, since there was no competent evidence to show the delivered price of the coal bought by the plaintiffs, or the price of other coal at the place of delivery, viz.: Straight Creek, Ky.

Second. Error in not directing a verdict for defendant for the full amount of its contract upon the ground that there was no testimony to show any damage to plaintiff under the contract, there being no testimony to show the market price of coal at Straight Creek, Ky., the point at which coal was to be delivered, and no testimony showing the freight charges on coal from that point.

Third. Error in allowing the witness J. W. Arrington to testify, over the objection of defendant: "We had to buy elsewhere something over 4,000 tons. The average cost to us of the coal we bought outside was $4.72, and the contract price was $2.22." Specifications: That according to witness' own statement he had no independent recollection as to these matters, but they were matters of record, and the books proved by the party who made the entries were the best evidence.

Fourth. Error in admitting statement and invoices, representing coal purporting to have been bought by plaintiff, as shown by Exhibits B and 13. Specifications: That the invoices did not show the price of coal delivered but the price at which plaintiff procured coal at other places; the statement, Exhibit B, introduced in evidence by plaintiff to prove his alleged damage, does not agree with the invoices introduced.

Fifth. Error in refusing to charge defendant's second request, as follows: "The Court instructs the jury that the proper construction of the contract in this case is that the seller, the Barker Fuel Company, was only to deliver to the buyer, the Union Bleaching & Finishing Company, the plaintiff herein, such an amount of coal as was actually necessary in the business of the plaintiff, and such an amount as the plaintiff would advise the seller to ship."

Sixth. Error in modifying defendant's fifth request by refusing to charge the following portion of said request: "The Court further instructs the jury that in no event did any amount of coal have to be shipped excepting to meet the actual needs of the plaintiff, and of this defendant was to be advised by the plaintiff."

Seventh. Error in modifying defendant's tenth request by refusing to charge the following portion of said request: "* * * And in no event was the defendant under any obligation to ship coal after the expiration of the contract to make any such default, if such default existed."

Eighth. Error in refusing to charge, as requested by defendant, if no damage was proved by plaintiff, that they should find for defendant the full amount of the counterclaim, $2,260.06.

Ninth. Error of the jury in returning a verdict in favor of plaintiff for $660.69, because there was no evidence under any theory of the case to show a damage to plaintiff growing out of the alleged breach of contract of so large a sum and

the verdict was therefore not only contrary to the evidence, but was without any evidence to sustain it.

*Messrs. Blakey, Davis & Lewis* and *Wilton H. Earle,* for appellants, cite: *Best evidence as to price:* 22 C. J., 893; 79 S. C., 250. *Contract was only for needs of plaintiff:* 104 Fed., 200; 185 No. 25; 169 Mo., 137; 35 Cyc., 208. *Measure of damage:* 68 S. C., 363; 200 Fed., 393; 76 Fed., 427; 99 Fed., 339; 64 Fed., 569; 117 Fed., 138. *Strike suspended operation of contract but did not postpone it:* 113 Fed., 256; 129 Fed., 174.

*Messrs. Haynesworth & Haynesworth,* for respondent, cite: *Defendant bound to ship coal for plaintiff's needs:* 115 U. S., 188; 95 C. C. A., 80; 52 C. C. A., 626; 265 Fed., 842. *Strike did not relieve defendants of obligation:* 272 Fed., 625; 264 Fed., 27; 174 Fed., 631; 133 Fed., 108; 213 Fed., 743; 84 N. E., 1020; 89 N. E., 115. *Rule as to use of memoranda:* 41 S. C., 149; Jones Ev. Sec. 877; p. 1122. *Measure of damages:* 23 Wall., 471; 57 L. R. A., 197; 22 C. J., 187; par., 336-8. *Supreme Court will not disturb verdict:* 85 S. C., 463; 74 S. C., 221; 100 S. C., 221; 100 S. C., 33.

May 28, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action for damages resulting from the alleged breach of a contract involving the purchase of a lot of coal by the plaintiff from the defendant.

It appears that on June 21, 1919, the parties entered into a contract, whereby the defendant, Barker Fuel Company (hereinafter referred to as the "coal company"), agreed to ship to the Union Bleaching & Finishing Company (hereinafter referred to as the "Bleaching Company") a quantity of 4-inch run of mine coal, at the price of $2.22 per ton, f. o. b. the mines at Straight Creek, Ky. The quantity contracted for was stated in the contract to be, "Requirements,

6,000 tons, more or·less, to April 30, 1920," and deliveries were to be at the rate of 2 cars weekly until further notice, with an immediate shipment of 15 additional cars. The limit of time was April 30, 1920. Delivery at Greenville, S. C.

The Bleaching Company's claim is that the coal company failed to ship the quantity·of coal due under the contract, and that it became necessary to purchase from other sources a total of 2,745.85 tons, at a cost ·of $4,288.52 more than would have been the cost under the contract.

After the expiration of the contract the coal company sold to the bleaching company 7 carloads of coal, at the regular market price, for $2,260.06. There is no contest as to this transaction. The bleaching. company admits it, but claims the right to set off its liability on account thereof against its claim for damages on account of the breach of the contract, and sues for the difference between $4,288.52 and $2,260.06, $2,028.46. The coal company contends that it did not breach the contract, and that the bleaching company is indebted to it for the price of the 7 carloads delivered outside of the contract, $2,260.06.

At the conclusion of the evidence on both sides the defendant moved for a directed verdict upon the counterclaim of $2,260.06, on the ground that there was no evidence in the case substantiating the claim of loss to the plaintiff under the contract, which motion was refused. The jury rendered a verdict of $660.69 in favor of the plaintiff, and from the judgment entered thereon the defendant has appealed. The exceptions will be reported. The verdict of the jury, taken in connection with the admitted liability of the bleaching company for the 7 carloads of coal purchased outside of the contract, amounting to $2,260.06, must be interpreted as a finding that the bleaching company was damaged by the coal company's failure to comply with the contract in the sum of $660.69 plus $2,260.06, $2,920.75.

The contract called for the delivery of 15 carloads immediately, and a shipment of 2 carloads per week during the life of the contract, June, 1919, to April, 1920, and more if the needs of the bleaching company required it, and notice be given to the coal company. There was no effort on the part of the defendant to show that the agreement had been carried out. The evidence for the plaintiff tends to show the contrary. The evidence for the defendant shows that the price of coal steadily advanced during the life of the contract, and their statement shows that during that period they sold on open market 60,670 tons and upon their contracts only 54,507 tons, which doubtless accounts for the shortage in the plaintiff's contract. If not conceded, there is abundant evidence from which the jury may have concluded that there was a breach of the contract. There are no exceptions raising any issue as to this, and it will be treated as an admitted fact in the case.

## THE FIRST AND SECOND EXCEPTIONS

These exceptions assign error in refusing the defendant's motion for a directed verdict upon the counterclaim of $2,260.06.

The counsel for the appellant thus state their position:

"Our fundamental proposition on this point is that plaintiff has wholly failed by competent evidence to prove any damage growing out of defendant's alleged breach of contract."

They specify the grounds of such alleged failure to be:

(1) There is no evidence of the delivered price of the coal bought by the plaintiff to supply the alleged deficiency in the execution of the contract.

(2) There is no evidence of the price of other coal at Straight Creek, Ky., the place of delivery under the contract.

(3) There is no evidence of the market price of coal at Straight Creek, Ky., the place of delivery under the contract.

(4) There is no evidence of the freight charge on coal at Straight Creek, Ky.

The specifications appear to have been drawn to meet either construction of the ·contract as to the delivery point; the first upon the theory that the delivery was to be made at Greenville, .S. C.; the other three at the mines, Straight Creek, Ky.

The coal company agreed to ship the coal from the mines at Straight Creek; Ky., to the bleaching company at Greenville, S. C. In the absence of some qualifying provision, the point of delivery would be Greenville. It is contended that the expression, "Price $2.22 f. o. b. mines," is such a qualifying provision as to make the point of delivery at the mines, Straight Creek, Ky. We do not so consider it, but construe that expression as simply a provision determinative of the party liable for the freight charges, as it appears to have been inserted for the purpose of fixing the price, with which it is directly connected, and not the delivery, with which it has no connection, and which is distinctly provided for.

Assuming, then, for the moment, that the point of delivery was Greenville, and assuming also the breach of the contract, the rule for the ascertainment of damages generally adopted is to ascertain the difference between the ·market price of the commodity at the time and place of delivery under the contract and the contract price.

It will be observed that the only exceptions to the plaintiff's evidence, so far as delivery at Greenville is concerned, is the failure to prove the "delivered price of the coal bought by the plaintiffs." This, under the rule stated, was not an element necessary to be proved in establishing the amount of damages.

But, if it should be held that the "delivered price" (cost?) at Greenville was an essential part of the plaintiff's evidence, the invoices of coal, bought elsewhere by the plaintiff to supply the defendant's default, were evidence of what the plaintiff paid for the coal, exclusive of the freight. They showed at least a part of the delivered

cost.   The defendant is not in a position to complain that
the cost shown was not as great as it might have been shown.

Besides, as the contract requires the bleaching com-
pany to pay freight from the mines to Greenville,
the defendant could justly be charged only with the
excess of freight which the plaintiff had to pay over that
freight.   That this did not appear is not a matter of which
the defendant can complain.

The admissibility of these invoices is questioned by the
defendant.   In the first place, the invoices were presented
upon demand of the defendant after previous notice to pro-
duce; in the second place, while it appears that their in-
troduction was objected to, no grounds of objection were
stated; in the third place, counsel for appellant admit in their
argument that they were admissible for what they were
worth.

It will be noted that the evidence in Exhibit B has not
been considered in the disposition of this question.   But it
appears that the ruling of the trial Judge was not in con-
formity with the construction we have placed upon the con-
tract as to the point of delivery.   He held "that the point
of delivery was at the mines (contract so states, 'f. o. b.
mines') ;" and it may plausibly be insisted that, as there is
no exception to this ruling, it has become "the law of the
case."   Assuming this to be true, the three specifications
above set forth, based upon the theory that the point of
delivery was at the mines, Straight Creek, Ky., will be con-
sidered.   We take it that the second and third specifications
are practically of the same import, and make the point that
there was no evidence tending to establish the market price
of coal at the mines.

If the point of delivery was at the mines, it was in-
cumbent upon the plaintiff to offer evidence of the
market price there, if there was a market other than
the price fixed by the mine itself; otherwise at the most
available market.

The defendant itself has supplied at least sufficient evidence along this point to require a submission of the issue to the jury. The testimony of Barker, one of the defendants and manager of the business, was to the effect that between November, 1919, and April, 1920, the Government had fixed the price at the mines at $3 per ton. That of Anderson, auditor of the company, was to the effect that there was an open market at the mines from June, 1919, to November, the price ranging from $2,60 to $2.75; that it reached $4 in October, when the strike was imminent, and that during Government control it was $3 plus 15 cents per ton commissions, later with an allowance for increased wages. This certainly supplied the jury with some data with which to figure the market price at the mines.

The matter of the freight from the mines to Greenville, referred to in the fourth specification above, has not been argued by counsel, we assume for the reason that it appeared in the evidence to be $2.50 per ton, and was really a negligible factor in estimating the plaintiff's damages in the absence of evidence of freight rates from the points at which they bought outside coal.

Referring to the cost of coal purchased by the plaintiff as shown in the batch of invoices, counsel for appellant remark:

"This would give a total cost of $11,133.62 for the 2,745.-85 tons, as against an admitted cost by (to?) plaintiff for the same quantity of coal if secured from the defendant of $12,960.41."

The inference suggested is that the plaintiff has suffered no damage as demonstrated by its own showing. But counsel lose sight of the fact that in arriving at the figures $12,960.41, the 2,745.85 tons are estimated at the contract price of $2.22 plus $2.50 per ton freight, total, $4.72, whereas the statement showing the cost from others of coal bought to supply the 2,745.85 tons deficiency does not include the

freight.  If that would be added, at the same rate the cost of the coal represented by the invoices would be $11,133.62 plus $2.50 per ton freight on 2,745.85 tons, $6,864.62, total, $17,998.24, as against $12,960.41; a loss of $5,037.83.

Arriving at the same conclusion another way:  The invoices show that the bleaching company bought from other sources 2,745.85 tons at a cost to it, exclusive of the freight, of $11,133.62.  If this coal had been delivered under the contract, it would have cost (2,745.85 tons at $2.22) $6,-095.79, likewise exclusive of the freight, a difference of $5,037.83.  There was evidence tending to show that the coal company had not complied with its contract as to weekly deliveries; that these purchases were necessary to meet such deficiencies in shipment, and that the prices paid were the best the bleaching company could obtain at the time.

We do not think, therefore, that there is any foundation for the position that there is no evidence of any damage to the plaintiff from the practically admitted default of the defendant, and that the motion for a directed verdict was properly denied.

### THE THIRD EXCEPTION

This exception assigns error in the admission in evidence of the testimony of J. W. Arrington:

"We had to buy elsewhere something over 4,000 tons. The average cost to us of the coal we bought outside was $4.72, and the contract price was $2.22."

The objection at the trial went only to "testimony as to comparative prices."  The declaration of the witness, "We had to buy elsewhere something over 4,000 tons," was received without objection.  The testimony as to comparative prices did not at the time it was given appear to have been taken from Exhibit B, but as the statement of a fact. If it had appeared subsequently that it had been made from Exhibit B, and that that statement was made up by others, doubtless the declaration of the witness would have been stricken out; but no such motion was made.  As a matter of

fact Arrington's testimony as to comparative prices could not have been given from Exhibit B, for that shows the average price per ton of coal bought elsewhere, including freight, was $6.35, and not $4.72, as he stated.

## THE FOURTH EXCEPTION

This exception assigns error in the admission of Exhibits B and 13, and is obnoxious to rule 5, § 6 (90 S. E. vii):

"Each exception must contain a concise statement of one proposition of law or fact which this Court is asked to review."

Aside from this objection, there is no merit in the exception.

Exhibit B is a statement purporting to show in an itemized form purchases of coal by the plaintiff outside of the contract with the defendant. It gives the dates, names of sellers, quantity, price per ton and facts:

| | |
|---|---|
| 2,745.85 tons | $17,417.03 |
| From which is deducted | 12,960.41 |
| Which represents what would have been the price under the contract, a difference of | $ 4,456.62 |

The record does not show that this exhibit was formally offered in evidence, or that the defendant entered objection thereto with the grounds of objection. But, aside from this, the only objection to the exhibit specified in the exception is that it "does not agree with the invoices introduced." This constitutes no objection to the admission of the exhibit. It was evidently not intended to agree with the invoices, as it included freight, while the invoices did not.

The objection specified to the invoices is that they "did not show the price of coal delivered, but the price at which plaintiff procured coal at other places." This objection appears to have been waived by defendant's counsel, who say in their brief, "As these are original bills they are probably admissible for what they show," to which we agree.

### THE FIFTH AND SIXTH EXCEPTION·

As stated by counsel for the appellant:

These "exceptions go to the refusal of the trial Court to instruct the jury that no greater quantity of coal was required under the contract than the actual needs of the plaintiff."

The trial Judge charged the jury in his general charge:

"That remark 'meet actual needs' I construe up to 6,000 tons; if that much was actually needed, and the company advised them that much was needed, then they were obliged to ship that amount."

He also charged:

"The plaintiff would not be required to recover up to the limit if they did not require that amount."

He specifically allowed the defendant that request, which was as follows:

"The Court instructs the jury that the words 'requirements, 6,000 tons, more or less, to April 30, 1920' set forth in the contract, means that the purchaser was not to receive in excess of 6,000 tons of coal, but it does not mean that 6,000 tons were to be delivered by the seller in any event, but only such an amount was to be delivered as was necessary to meet the actual needs of the plaintiff, and of this plaintiff was to advise the seller."

It appears, therefore, that the defendant received the full benefit of the proposition contended for.

### THE SEVENTH EXCEPTION

The appellant assigns error in the refusal of the following request to charge:

"In no event was the defendant under any obligation to ship coal after the expiration of the contract to make good any such default, if such default existed."

Under ordinary conditions this request states a correct principle of law. It is a corollary of the well-established measure of damages upon the breach of a contract of sale;

the difference between the market price at the time and place of delivery and the contract price. To recognize the obligation to deliver after the time limit of the contract would imply a similar right to deliver. In the one case the seller might unjustly be held for an advance in the market price, and in the other allowed credit for a decline. This rule, however, does not apply to a case like the present one, where the seller sets up as an excuse for nondelivery circumstances of strikes, car shortage, and the like. In such cases the obligations to deliver are simply suspended, to be resumed after labor or car service had assumed normal conditions.

In 35 Cyc., 249, the rule announced is as follows:

"Where the contract provided that delivery shall be subject to strikes, the existence of a strike merely suspends deliveries during the strike, and does not terminate the contract, and the seller is therefore bound to resume deliveries after a reasonable time after the strike has ceased."

In *Fish v. Hamilton*, 112 Fed., 742; 50 C. C. A., 509, the delivery of certain goods under a contract of sale was to be made within a fixed period, subject to this clause: "Barring fires, strikes, or other unavoidable casualties." The seller contended that a strike which lasted for two months avoided the whole contract. The Court held:

"The provision affects the terms of delivery only, and that the seller was bound to deliver within a reasonable time after the termination of the strike."

In *Jackson Co. v. Caraleigh Works*, 213 Fed., 743; 130 C. C. A., 257, the buyer attempted to hold the seller to strict delivery within the specified time, a car shortage having prevented full delivery. It was held that the proviso as to shipments should be construed as relating to the time of delivery, and not to the life of the contract, and that the seller, after the termination of the car shortage, was entitled to a reasonable time to deliver the goods.

## The Eighth Exception

The appellant assigns error in the failure of the trial Judge to charge:

"If no damage was proved by plaintiff, that they should find for defendant the full amount of the Counterclaim."

The request was tendered orally at the conclusion of the Judge's charge. It was not in conformity with rule XI, Circuit Court Rules, and it will be assumed that the failure to respond to it was based upon noncompliance with the rule. *Morrison v. Ass'n,* 78 S. C., 398. Aside from this technical objection to the consideration of this exception, the idea necessarily ran through the entire charge, and was practically covered in the charge to this effect:

"Take up the question whether the company is entitled to recover for nondelivery, from the preponderance of the evidence; set the amount down and deduct the amount set up in the counterclaim, $2,260.06, if the amount of damages, if you find any, amounts to more; then you say we find for the plaintiff the difference between that and the $2,260.06, the counterclaim."

If there was no subtrahend, there could be no subtraction.

## The Ninth Exception

The appellant's counsel have presented an elaborate and interesting argument to demonstrate that the verdict of $660.09 in favor of the plaintiff is excessive, contrary to the evidence, and without any evidence to sustain it. As expressed in their argument:

"That on no theory of the case was plaintiff entitled under the evidence to the verdict which was given."

This Court is without jurisdiction to review a judgment upon the ground alone that the verdict upon which it is based is excessive or contrary to the evidence. If upon a motion for a new trial it should be made to appear, as a matter of law, an inference from admitted facts, or of facts

admitted for the purpose of the motion, that the verdict is excessive, this Court may review a contrary ruling by the trial Court.   Here, however, the record does not show that such a motion upon such ground was made in the lower Court.   The only reference found in the record to the matter of a motion for a new trial is this statement:

"The defendant appeals  *  *  *  from the order overruling the motion for new trial which was based on the above grounds."

If this could be considered as the statement of the fact that such a motion was made, no preceding grounds appear to which reference might be had.   And if all these elements appeared, there is no exception to the order refusing the motion.

As to the point that the verdict is without any evidence at all to support it, that matter has been disposed of in the discussion of the exception to the refusal of the trial Judge to direct a verdict in favor of the defendants.

The judgment of this Court is that the judgment of the County Court be affirmed.

MESSRS. JUSTICES GARY, WATTS, FRASER and MARION concur.